FILED
SUPERIOR COURT
OF GUAM

2023 AUG -4 PM 1:33

CLERK OF COURT



# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>**PERRY ANTHONY MENDIOLA,**<br><br>Defendant. | CRIMINAL CASE NO. **CF0373-22**<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on June 23, 2023, for hearing on Defendant Perry Anthony Mendiola's ("Defendant") Motion to Suppress. Present were Assistant Attorney General Kristine Borja on behalf of the People of Guam ("the Government") and Defendant with counsel, Assistant Public Defender William C. Bischoff. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On June 20, 2022, Defendant was indicted with the following charges: (1) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); (2) Resisting Arrest (As a Misdemeanor); and (3) Eluding a Police Officer (As a Misdemeanor). (Indictment, Jun. 20, 2022). These charges stem from allegations that Defendant was operating a motorcycle at a high rate of speed and attempted to elude police. (Decl. of J. Basil O'Mallan III, Magistrate's Compl., Jun. 3, 2023). After the motorcycle finally stopped, Defendant refused to cooperate with police

and struggled with them. *Id.* When officers tried to get positive identification from Defendant, they found several plastic baggies within a bag he was carrying containing suspected methamphetamine. *Id.*

On May 11, 2023, Defendant filed the instant motion. The Government did not file a written response, but orally opposed the motion at the Motion Hearing.

On June 23, 2023, the Court heard sworn testimony from Guam Police Department ("GPD") Officer Byron Joseph Duenas, Officer Joseph Anthony Tudela Gabutin and Defendant. The Court subsequently gave the parties three weeks to submit proposed findings of fact and conclusions of law. The Court did not receive proposed findings from either party.

At the Suppression Hearing, the Court ascertained the following facts:

1. On June 2, 2022 around 2:25 in the morning, Officers Duenas and Gabutin were traveling on Route 10 approaching the Chalan Pago Church when they came across a motorcycle traveling in the opposite direction at a high rate of speed.

2. Officer Duenas and Gabutin were in a marked patrol vehicle. Officer Gabutin was the driver.

3. Officer Duenas indicated that they did not have a radar, but that any reasonable person would have observed it traveling above the speed limit of 35 miles per hour.

4. Officer Duenas testified that they were traveling a little bit below the speed limit.

5. Officer Gabutin executed a u-turn to try to follow the vehicle to pace it and see how fast it was going. When Officer Gabutin noticed that his speedometer was over 45 miles per hour and the motorcycle was still able to have a gap and pick up speed, he attempted to effectuate a traffic pull over.

6. Officer Gabutin activated the emergency lights and sirens on the patrol vehicle, however, the motorcycle refused to pull over and continued to travel at a high rate of speed.

7. Officer Duenas testified that the motorcycle increased speed because it started to gain significant distance from their patrol car.

8. Officer Gabutin had to increase his speed up to 70 miles per hour to keep up with the motorcycle.

9. Both Officers Duenas and Gabutin testified that they followed him onto Route 10 to the Father Duenas Memorial School area and all the way to the tri-intersection (Route 10, Route 8, and Route 16) attempting to pull him over. Defendant took a right turn and continued to drive all the way to the over-pass area. Defendant then took a right turn towards the Cost-u-less and Compadres Mall area in Harmon. Defendant proceeded all the way to Route 1 up to Route 9 in Yigo by Anderson Air Force Base then around nictams (Route 3 area) and then back down towards Route 1 by Jollibee. Officer Duenas testified that they then turned at Jollibee towards Harmon Loop and proceeded towards the overpass.

10. Officer Duenas testified that the motorcycle went into the oncoming lane at the overpass. Officer Duenas testified that they drove towards the tri-intersection again, where the motorcycle took a left turn and proceeded towards Route 10 and past Father Duenas Memorial School. Officer Duenas testified that the lights and sirens were activated this whole time.

11. Officer Duenas testified that the motorcycle turned right onto Route 4 back to the area they first observed him towards Chalan Pago Church and Dero Road.

12. Officer Duenas testified that when they approached the traffic light, his window was down and the motorcycle was slowing down and coming to a stop. Officer Duenas informed the operator to stop the motorcycle and step off the motorcycle as he was exiting the patrol vehicle.

13. Officer Duenas testified that the operator tried to take off again and he had to use his taser to incapacitate him.

14. Defendant fell to the ground and was given more verbal commands to show his hands. Officer Duenas testified that as officers were attempting to place Defendant in restraints, he continued to refuse and not comply. Officer Duenas testified Defendant's hands were tucked in under his stomach area.

15. Officer Duenas testified he had to discharge his taser a second time.

16. After Defendant was placed in restraints, he was secured and searched incident to arrest. Officer Duenas found multiple reusable baggies with suspected methamphetamine residue and fabricated glass pipes.

17. Defendant admitted on the stand that he was aware of the lights and sirens but that he refused to stop the motorcycle.

## DISCUSSION

Defendant moves the Court to suppress all evidence seized in this matter, both physical and verbal, on the grounds that they were the fruit of an illegal pull over. *See generally*, Mot. Suppress, May 11, 2023.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation has occurred. Further, it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *Chargualaf*, 2001 Guam 1 ¶ 17 (citations omitted). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted).

In this case, Officer Gabutin effectuated a traffic stop after observing Defendant traveling at a high rate of speed. Officer Gabutin testified that he effectuated a u-turn to pace the Defendant on his motorcycle. After Officer Gabutin noticed that his speedometer was over 45 miles per hour and the motorcycle was still picking up speed, he attempted to effectuate a traffic stop.

Defendant refused to pull over, however, and continued to travel at a high rate of speed, leading the officers all over the north of Guam. Officer Gabutin testified that at one point he was traveling at 70 miles per hour. Officer Gabutin testified that there was about six car lengths between the patrol car and the motorcycle, and Officer Duenas testified there was about 100 feet in between. The Court finds that based on this testimony, the Officers had reasonable suspicion Defendant was traveling above the posted speed limit of 35 miles per hour, against Guam law. *See, e.g., United States v. Green,* 897 F.3d 173, 178 (3d Cir. 2018) ("When pacing, the key requirement is maintaining a consistent distance with the target vehicle. . . . Logically, the more excessive a driver's speed, the less precise a measurement must be to establish reasonable suspicion that the driver is speeding at least to some degree. The operative question is whether [the officer] had a reasonable suspicion [the defendant] was speeding, not whether [the officer] could determine [the defendant's] exact speed." ). Further, Defendant admitted that he was aware of the lights and sirens while driving and that he did not pull over. Accordingly, the Court finds that the effectuation of the traffic stop was valid and DENIES Defendant's Motion to Suppress.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES the Motion to Suppress. Parties shall return for a Pre-Trial Conference on **August 8, 2023** at **10:00 a.m.**

**IT IS SO ORDERED** this ___ day of August, 2023.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

*People v. Mendiola*
Case No. CF0373-22
Decision and Order